OPINION. Hill, Judge: The only question for our determination in this case is whether a partnership, valid for tax purposes, existed between petitioners and their children, Harkness, Jr., and Harriet Colgate, in 1943. Petitioners contend that a valid partnership was formed between petitioners and their children on January 1,1943, for the conduct of business under the name of United Packing Co., which continued in existence throughout the year. There is no contention on their part that William Colgate was a partner during this period. Respondent argues that all the net income of United Packing Co. in 1943 was community income of petitioners because no bona fide partnership existed in that year. Since this case arises in a community property state, California, and there is no serious contention denying the wife’s interest in United Packing Co., our consideration is directed to the alleged participation of the children in the business as partners. In determining whether a bona fide partnership existed between the three Harknesses and Harriet Colgate in 1943, the basic question is, as the Supreme Court stated in Commissioner v. Culbertson, 337 U. S. 733: * * * whether, considering all the facts — the agreement, the conduct of the parties in execution of its provisions, their statements, the testimony of disinterested persons, the relationship of the parties, their respective abilities and capital contributions, the actual control of income and the purposes for which it is used, and any other facts throwing light on their true intent — the partjes in good faith and acting with a business purpose intended to join together in the present con-duet of the enterprise. [Italics supplied.] While some of the evidence in this proceeding is indicative of a valid family partnership, yet, after careful study of the purposes which mo-, tivated the formation of a partnership for the conduct of United Packing Co., the circumstances existing at the time of this decision, the partnership agreement and the supplementary agreement thereto, and the actual conduct of the business throughout the year 1943, we are convinced that there was no intent on the part of the four alleged partners to join together in the present conduct of United Packing Co. in 1943. Both the purposes stated by Harkness, Sr., for converting the sole proprietorship into a partnership and the circumstances existing at the time of this decision in the fall of 1942 plainly show it was not contemplated by any of the parties that the Harkness children would contribute substantial capital or vital services to the conduct of the business in 1943 or play any active part in its management. The evidence is clear that Harkness, Sr., offered his son and daughter an opportunity to acquire an interest in United Packing Co. in 1943 primarily to obtain the future services of his son and his son-in-law, William Colgate. He did not thereby expect to acquire either capital or services from Harriet at any time, but wished to provide her with an opportunity for investment and lay the foundation for future participation in the company’s affairs by her husband. His testimony shows that the year 1943 was chosen for conversion of the sole proprietorship into a partnership in order to guarantee the services of young Harkness and William Colgate after their return from the war, rather than to secure their present services. Q. You knew at the time you organized the company noth your son and son-in-law were in the service, and you knew, naturally, that they couldn’t render any service at the time. Why did you create the partnership knowing that they could not render any service until they were released from the Army? A. I wanted to he sure of their services * * * The circumstances existing in the fall of 1942 also make it obvious that no vital services or contributions of original capital could have been expected from the Harkness children in 1943. Harkness, Jr., had been in the Army since January 1942, and there was little likelihood of his return to Fresno for the duration of the war. He owned no substantial property at this time and his prospective earnings were low while in the Army. Harriet had left California to accompany her husband across the country in his various stateside Army assignments in August 1942 and there was no certainty when he would be released. At the time of her marriage she had no independent means of her own and the evidence does not reveal the capital resources of her husband. In keeping with economic status, neither Harkness child made any substantial contribution of new capital to United Packing Co. when the partnership was formed in 1943. Harriet acquired her one-fourth interest in the partnership solely by means of a promissory note, which was paid entirely out of the company’s profits accruing from the business at the close of the year. Young Harkness gained his interest in United Packing Co. by using a credit of $1,392.05 owed him by his father for prior services and by signing a promissory note for $38,-168.35, which was paid out of company earnings for 1943. Since this credit was but a tiny fraction of the company’s total capital of $138,-241.61 on January 1943, we must conclude that neither Harkness, Jr., nor Harriet Colgate contributed any substantial capital not already available to the company within the meaning of Lusthaus v. Commissioner, 327 U. S. 293. While such lack of a capital contribution originating with themselves is not in itself determinative of the partnership status of the Harkness children, yet the presence or absence of such a capital contribution is a significant test of whether the parties intended to form a bona fide partnership. Lusthaus v. Commissioner, sufra; Commissioner V. Tower, 327 U. S. 280. Turning to the partnership agreement, it also refutes an intent by the signatories to join together in the present conduct of the affairs of United Packing Co., but rather shows an intent that Harkness, Sr., continue to control the conduct of the business as in prior years, when he was sole proprietor. The parties therein agreed that neither Harriet, young Harkness, nor Molly Harkness would devote any time to carrying on the business unless thereafter agreed upon, but that Harkness, Sr., would be general manager thereof in full charge of all business operations which he might conduct as he chose. Harkness, was given full charge of the books of accounts of the partnership and of the collection and expenditures of money taken in. His consent was necessary to bind the partnership in any business transaction and to lower or raise partnership capital. His participation was necessary in the adjustment of any misunderstanding between the partners as to the conduct of the business and in the determination of the proper allocation of profits and losses among the partners. Furthermore, the Harkness children had no unhampered enjoyment of their share of the profits, for net income accruing to them was first to be turned over to Harkness, Sr., and applied to any payments he may have advanced to them and the balance was then to be applied on the promissory notes executed in his favor. Thus by the terms of the partnership agreement Harkness, Sr., retained a controlling position over the company’s activities and the income therefrom. The supplementary agreement of January 4, 1943, also contradicts any intent on the part of the alleged partners to join together their services in the conduct of United Packing Co. in 1943. By its provisions Harkness, Sr., alone was to receive compensation for services because he was to be the only active partner in the business for the duration of the war. Finally, the actual conduct of the business of United Packing Co. in 1943 makes it clear that the parties intended for Harkness, Sr., to operate it as a sole proprietor for the duration of the war. Young Harkness and Harriet Colgate rendered no vital services, nor did they participate in the management of the business during that year. Harriet was absent from Fresno the entire time. While by chance young Floyd was stationed in California during almost all of 1943 and frequently visited the company’s plant on week ends to talk over business conditions with his father, yet such visits hardly bespeak an active role in the conduct of the company, but rather a continuing interest therein by a prospective participant. The evidence reveals only one transaction, the purchase of River Ranch, where the approval of his children was sought by Harkness, Sr. Nor was Floyd, Jr.’s, intent to perform future services for United Packing Co. on his return from the war sufficient to give him a partnership status in 1943. As the Supreme Court said in Commissioner v. Culbertson, supra: * * * The intent to provide money, goods, labor, or skill sometime in the future cannot meet the demands of §§ 11 and 22 (a) of the Code that he who presently earns the income through his own labor and skill and the utilization of his own capital be taxed therefor. The vagaries of human experience preclude reliance upon even good faith intent as to future conduct as a basis for the present taxation of income. Harkness, Sr., frankly admitted in his testimony that the conduct of the company’s business was not altered in 1943, but remained essentially the same as in 1942, when he operated United Packing Co. as a sole proprietor. We conclude that he continued to dominate all phases of the company’s life as before, and that the children acquiesced in such control of the business by their father. The evidence is decisive that the income of United Packing Co. for 1943 was earned by the efforts of Harkness, Sr., and that the capital was contributed by both petitioners rather than from the services or capital contributions of the son and daughter. Nor were Harkness, Jr., and Harriet Colgate entirely free to enjoy the fruits of their respective interests in the partnership at the close of 1943. In accordance with the partnership agreement Harkness, Sr., had first call on their shares of the company’s net earnings for the year to offset the credit he had advanced to Harriet’s capital account and to pay off the principal and interest on both their promissory notes which he held. Only after these obligations had been met were the children allowed to exercise control over their shares of the profits of United Packing Co. On the basis of all the evidence, we believe that the three Harknesses and Harriet Colgate had no present intent, but rather an indefinite future plan, to operate United Packing Co. as a genuine partnership when the partnership papers were drawn up, and thus we conclude, and have found as a fact, that the Harkness children were not bona fide partners in 1943 within the meaning of Commissioner v. Culbertson, supra. We therefore hold that one-half of United Packing Co.’s net income for 1943 should be taxed to each of the petitioners as owners of the business in community. Due to the fact the amount of the company’s net income for 1943 determined by respondent is at variance with the amount stated in the stipulation of facts, the deficiencies in the income tax liabilities of petitioners must be redetermined. Decisions will be entered under Rule 50.